Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order

United States Courts
Southern District of Texas
FILED
*April 29, 2021*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | **Criminal No.:** 4:21-cr-230 |
| **v.** | § | |
| | § | **UNDER SEAL** |
| **SAMUEL AYOTUNDE DIPEOLU** | § | |
| **a.k.a. SAM DIPEOLU,** | § | |
| **NGOZI CATHERINE OKOLI** | § | |
| **Defendants** | § | |

## INDICTMENT

The Grand Jury charges:

## General Allegations

At times material to this Indictment:

1) The Medicare Program ("Medicare") was a federal healthcare program for people who are 65 or older, certain younger people with disabilities, and people with End-Stage Renal Disease. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS") administered Medicare. Individuals receiving benefits under Medicare were referred to as "beneficiaries."

2) Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3) Medicare paid for certain health care services in the home of beneficiaries if certain eligibility criteria were met and the services were considered reasonable and necessary for the treatment of the beneficiaries' illness or injury. This was known as the Medicare home health benefit.

4) A Medicare beneficiary would have been eligible for the home health benefit if following conditions were met:

   a) The beneficiary was under the care of a doctor and received services under a plan of care established and reviewed by a doctor.

   b) The beneficiary needed, and a doctor certified the need, for one or more of the following:

      i) Intermittent skilled nursing care

      ii) Physical therapy

      iii) Speech-language pathology services

      iv) Continued occupational therapy

   c) The home health agency caring for the beneficiary was approved by Medicare.

   d) The beneficiary was homebound, and a doctor certified the beneficiary was homebound.

5) The Texas Medicaid program (Medicaid) was a state program, jointly funded by the State of Texas and the federal government. The Texas Health and Human Services Commission administered Medicaid. Medicaid provided medical and related services to families with dependent children and aged, blind, or disabled individuals whose income and other financial and economic resources are insufficient to allow them to meet the cost of necessary medical services. Individuals eligible under the Medicaid program were referred to as Medicaid "clients". Medicaid is a "health care benefit program" as defined by 18 U.S.C. Section 24(b).

6) Among the types of reimbursable medical assistance available to Medicaid clients were office visits, diagnostic testing, prescription drugs, and durable medical equipment. For Medicaid clients eligible to receive benefits under both Medicare and Medicaid, claims were submitted to Medicare first. Medicare would pay an allowable claim. Medicare would then electronically forward the claim to Medicaid. Medicaid would pay the coinsurance or deductible without further review of the claim. This type of claim was referred to as a "crossover" claim.

7) Uphill Home Health, Inc. ("Uphill") was a Texas business entity located in Houston, Harris County, Texas and within the Southern District of

Texas. Uphill was a health care provider purportedly providing home health services to Medicare and Medicaid beneficiaries located in the Southern District of Texas and elsewhere.

8) **Samuel Ayotunde Dipeolu ("Dipeolu")**, a resident of Harris County, Texas, was a registered nurse licensed in the State of Texas. **Dipeolu** owned and operated Uphill.

9) **Ngozi Catherine Okoli ("Okoli")** a resident of Fort Bend County, Texas, was a registered nurse licensed in the State of Texas.

## COUNT ONE

### Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349)

10) Paragraphs 1 through 9 are re-alleged and incorporated by reference as if fully set forth herein.

11) From on or about January 2012 through on or about October 2017, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendants,

**Samuel Ayotunde Dipeolu** and
**Ngozi Catherine Okoli**

did knowingly and willfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and

artifice to defraud a health care benefit program affecting commerce, as defined in Title 18 United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for health care benefits, items and services.

## Purpose of the Conspiracy

12) It was the purpose of the conspiracy for defendants and others, to unlawfully enrich themselves by (a) submitting and causing the submission of false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for personal use and benefit of the defendant and the co-conspirators.

## Manner and Means of the Conspiracy

13) The manner and means by which defendants and co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

14) **Dipeolu** owned and operated Uphill.

15) **Dipeolu** held himself out to the public as a registered nurse purportedly providing home health care services to Medicare and Medicaid beneficiaries in the Southern District of Texas, and elsewhere, through Uphill.

16) **Dipeolu** enrolled Uphill in the Medicare and Medicaid programs.

17) After Uphill was enrolled in Medicare, **Dipeolu** submitted and caused the submission of false claims to Medicare for home health services that were not medically necessary and in many instances, not provided.

18) **Dipeolu** directed **Okoli** and other employees to pay Medicare beneficiaries illegal kickbacks to sign blank home health forms which were used to enroll the beneficiaries for home health services with Uphill.

19) **Dipeolu** and **Okoli** would falsify, and directed subordinates to falsify, home health nursing notes, OASIS forms, CMS 485 forms and medical records. Defendants did this to give the appearance that legitimate home health services were rendered.

20) **Dipeolu** and **Okoli** forged, copied, and pasted physician names on home health certification paperwork.

21) **Dipeolu** and **Okoli** also forged, copied, and pasted nurse's notes.

22) From January 2012 through October 2017, **Dipeolu** fraudulently billed Medicare $1,367,848.92 of which Medicare paid $1,016,367.46.

23) The Medicare funds were transferred to accounts controlled by **Dipeolu**. Proceeds of the fraud were then used to promote the scheme, such as paying co-conspirators and patient recruiters.

All in violation of Title 18, United States Code, Section 1349.

**COUNT TWO**
**Conspiracy to Violate the Anti-Kickback Statute**
**(Violation of 18 U.S.C. § 371)**

24) Paragraphs 1 through 9 of the General Allegations Section of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

25) From on or about January 2012 through on or about October 2017, the exact dates being unknown, in the Houston division, within the Southern District of Texas and elsewhere, the defendant,

**Samuel Ayotunde Dipeolu** and
**Ngozi Catherine Okoli**,

did knowingly and willfully, combine, conspire, confederate and agree with other persons known and unknown, to commit and aid and abet

certain offenses against the United States namely the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

**Purpose of the Conspiracy**

26) It was the purpose of the conspiracy for defendants and co-conspirators to knowingly and willfully pay remuneration, in cash or in kind, to individuals to induce these individuals to arrange for home health, a service for which payment may be made in whole or in part under a federal health care program; namely the Medicare and Medicaid Programs.

**Manner and Means of the Conspiracy**

27) The manner and means used by the defendant to accomplish the purpose of the conspiracy included, among other things:

28) **Dipeolu** enrolled Uphill in the Medicare and Medicaid programs.

29) After Uphill was enrolled in Medicare, **Dipeolu** submitted and caused the submission of false claims to Medicare for home health services that were not medically necessary and in many instances, not provided.

30) From January 2012 through on or about October 2017 Medicare paid Uphill $1,016,367.46 for home health services.

31) The home health services were medically unnecessary and not provided.

## Overt Acts

32) In furtherance of the conspiracy, and to effect the object thereof, the defendant performed or caused to be performed, among others, the following overt acts:

A. **Dipeolu** knowingly and willfully recruited Medicare beneficiaries for Uphill through the use of bribes and kickbacks.

B. **Okoli**, coordinating with **Dipeolu**, knowingly and willfully bribed Medicare beneficiaries with cash to induce them to sign up for home health, resulting in the beneficiary's enrollment for home health services with Uphill.

C. **Okoli** and **Dipeolu** forged, copied, and pasted physician names on home health certification paperwork to create the appearance that the beneficiaries were eligible for services when they actually were not.

D. **Okoli** and **Dipeolu** also forged, copied, and pasted nurse's notes to create the appearance that the beneficiaries were eligible for services when they actually were not.

E. **Okoli** and **Dipeolu** caused Uphill to bill Medicare and Medicaid for fraudulent home health services.

All in violation of Title 18, United States Code, Section 371.

**CRIMINAL FORFEITURE**
**(18 U.S.C. §982(a)(7))**

33) Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to defendants that upon conviction of any Counts in this Indictment, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses, is subject to forfeiture.

34) Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendants up to the amount of the money judgment.

THIS IS A TRUE BILL:

____________________________________
FOREPERSON OF THE GRAND JURY

JENNIFER B. LOWERY
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF TEXAS

Abdul Farukhi
Special Assistant U.S. Attorney